IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2013 Session

# RUBY LOIS DYE v. LEONARD WALDO, ET AL.

**Appeal from the Chancery Court for Rhea County**
**No. 10563      Thomas W. Graham, Judge[1]**

_____

**No. E2012-01433-COA-R3-CV-FILED-FEBRUARY 26, 2013**

_____

This case involves a dispute over the ownership of a parcel of real property to which the appellees obtained title in May 2010. The appellant argued that the property belonged to her through the doctrine of adverse possession because she and her mother had used the property exclusively since 1937. The appellees proved at trial that the appellant had not paid taxes on the land for more than 22 years and moved for a directed verdict at the close of the appellant's case-in chief. The trial court granted the motion based upon the statutory bar imposed by Tennessee Code Annotated section 28-2-110. The appellant appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Rebecca L. Hicks, Dayton, Tennessee, for the appellant, Ruby Lois Dye.

Andrew F. Tucker, Dayton, Tennessee, for the appellees, Leonard Waldo and Samuel L. Swafford.

## OPINION

## I. BACKGROUND

The appellant, Ruby Lois Dye, alleged in this action that the appellees, Leonard Waldo and Samuel L. Swafford ("the Neighbors"), had encroached on her property. In a

_____

[1]Presiding Judge of the Twelfth Judicial District, sitting by interchange.

warranty deed filed in December 1988, the real property obtained by Dye was described as follows:

> BEGINNING on a white oak and hickory, pine and post oak pointers on the South side of Highway No. 68, the same being the beginning corner of the W.B. Gorden Grant No. 21059 and in the South boundary line of the Hubbard lands, also the beginning corner of the C.F. Ellison 39 acre tract of land; thence North 43 degrees West crossing said highway 80 poles to a stone and pointers; thence *[2] 60 degrees West 60 poles to a black oak and pointers; thence West 4 poles to the said Highway No. 68; thence Southeastwardly with the said highway to the BEGINNING, containing 20 acres, the same being more or less.
>
> There is EXCEPTED from the above conveyance, the property conveyed by Pearl R. Smith during her lifetime to the State of Tennessee as described in Deed Book ___, page ___, Register's Office, Rhea County, Tennessee.
>
> FOR PRIOR TITLE see Deed Book 69, page 505, Register's Office, Rhea County, Tennessee.[3]

Dye notes that her mother, Pearl Smith,[4] a predecessor in title, marked the property line by notching trees that grew along the line with a hatchet and painting the marks with paint. According to Dye, the boundary line was maintained in this fashion over the years.

Dye contends that during Pearl Smith's lifetime, a portion of the disputed area was used for livestock, including cows, mules, and hogs. Fencing was installed to enclose and control the animals. Dye further discloses that her mother had the timber cut off the property down to the railroad bed that runs through the disputed area. Additionally, rock was sold in the disputed area to the Robert Reed family, the Neighbors' predecessors in title. According to Dye, there have been no acts of possession by the Neighbors' predecessors in title during the period of time from 1937 through May 2010. Indeed, Dye notes that when Robert Reed had his property logged, he stopped at the hickory tree that signifies what Dye contends to be the property line. Dye therefore claims the disputed tract by adverse possession. Dye

---

[2]In Dye's deed, the "*" indicates where the term "north" is missing, in contrast to the property description in the original deed to her mother, Pearl Smith, from Black Mountain Land Company.

[3]Deed Book 215, Page 617, et seq., Register's Office of Rhea County.

[4]Pearl Smith died on September 16, 1987.

further asserts that the Neighbors knew their predecessors in title did not claim the property in question and were aware that there was a legitimate dispute as to ownership of this property. Relying on Tennessee's law of champerty, Tennessee Code Annotated section 66-4-201, et seq., Dye contends that the Neighbors' deed is void.

Prior to Dye obtaining her deed, the State purchased approximately 4.241 acres from her mother for the widening of Highway 68.[5] As a result of the conveyance to the State, the actual property received by Dye was reduced to approximately 15.759 acres. After obtaining a survey from Arnold Boynton, however, Dye now asserts that her property totals approximately 34 acres, including the area in dispute.

The Neighbors assert that Dye is claiming an additional 19.2 acres to her existing 16.7 acres[6] – over double the amount of property acreage actually conveyed to her. They submit that Dye never had a deed to the 19.2 acres claimed, neither Dye nor her predecessors in title ever paid any taxes on the 19.2 acres, Dye is barred pursuant to Tennessee Code Annotated section 28-2-110(a) for failure to ever file a claim or pay taxes within 20 years on the property in dispute, and Dye failed to prove that she had adverse, exclusive, open, notorious, or continuous use of the property.

Dye admits that from the time she obtained her deed in 1988, her property was assessed at 16.7 acres. For over 22 years, Dye took no action whatsoever regarding her allegations of having approximately 19.2 acres more in property until filing this lawsuit. It was uncontroverted at trial that Dye recently had listed her property for sale with a local realtor – advertising the total acreage to be 16.7 acres.

The Neighbors obtained title to their property via warranty deed in May 2010 from David Reed, Patsy Reed, Harley Smith, and Jimmy Harley Smith ("the Robert Reed heirs"),[7] the legal description including the alleged area in dispute.[8] The Neighbors assert that they

---

[5]Deed Book 159, Page 360, et seq., Register's Office of Rhea County.

[6]Since 1982, Dye's property has been assessed at 16.7 acres for tax purposes, but surveyed as 14.375 and 14.99 acres on surveys by two different surveyors. *See* Rhea County Tax Map 10 Parcel 18.00.

[7]Deed Book 403, Page 696, et seq., Register's Office of Rhea County. Robert Reed obtained the real estate in 1945 as high bidder at a tax sale (Deed Book 78, Page 28, Register's Office of Rhea County). The description contained in that deed was a boundary description purporting to contain 251.5 acres. The survey completed by Dock W. Smith for the Neighbors depicts the property as actually containing a total of 463.44 acres.

[8]The Neighbors are presumed to be the legal owners of the disputed property pursuant to Tennessee
(continued...)

have seen nothing to indicate actual, open, notorious, exclusive, or hostile possession by a party other than the Robert Reed heirs. They additionally contend that from the time their predecessors in title obtained title to the property, including the disputed area, they paid all taxes levied and assessed on the controverted area. It was undisputed by Dye that the Neighbors and their predecessors in title have paid the taxes on the disputed property since 1951.

Interestingly, Dock W. Smith had previously completed a survey on Dye's property in December 2009. Upon review of the survey, Dye made no assertion as to any alleged property to be in dispute and accepted the facts as to the size, location, and acreage of her property.

A hearing was held in this matter on May 8, 2012. The trial court ultimately ruled as follows:

PROCEDURAL STATUS

This case is a property dispute wherein the Plaintiff claims approximately 19.26 acres of land which is included within the deed description of the Defendants' deed. Plaintiff admits that her description does not include the disputed area, but she maintains that she is entitled to a declaration of title and to injunctive relief based on the doctrine of adverse possession. At the close of the Plaintiff's proof, the Court recessed and took under advisement Defendants' Motion for Directed Verdict based on the statutory bar imposed by T.C.A. § 28-2-110.

THE LAW

---

[8](...continued)
Code Annotated section 28-2-109, which states:

Any person holding any real estate or land of any kind, or to any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more than twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years shall be presumed prima facie to be the legal owner of such land.

Tenn. Code Ann. § 28-2-109. In order to rebut, Dye must prove, by clear and convincing evidence, that she has paid taxes on the property or has legal title.

The Statute

(a)  Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Tennessee Code Annotated § 28-2-110(a)

Case Law

Because tax maps are for the purpose of showing the plats upon which parties have paid taxes rather than establish boundaries, *Whitworth*, 731 S.W.2d at 917, a "slight overlap" would rarely have any effect on an evaluation for tax purposes. . . .  Tennessee Code Annotated § 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes.

*Cumulus Broadcasting, Inc. vs. Shim*,
226 S.W.3d 366 at 381 (Tenn. 2007)

FACTS

The proof at trial established the following:

1) Plaintiff is the owner of property described in a properly recorded deed describing a tract of land "containing twenty (20) acres . . . more or less" from which has been severed a parcel of 4.2 acres sold by Plaintiff's predecessors to the State of Tennessee. . . .

2)  Plaintiff's property per her deed was surveyed by Dock W. Smith, Registered Land Surveyor, on December 18, 2009, who calculated same to be 14.375 acres . . . .

3)  Plaintiff's aforesaid property was again surveyed by William Arnold Boynton, Registered Land Surveyor, on July 8, 2011, who determined same to

be 14.99 acres[]. . . .

4) There is no substantial difference between the two surveys as they relate to Plaintiff's deed.

5) The Defendants according to their deed description own 463.44 acres which adjoins Plaintiff's northeastern deed boundary. . . .

6) The area in dispute contains 19.26 acres . . . .

7) The uncontested proof shows the Plaintiff's property has been on the tax rolls of Rhea County since at least 1982 and has always been assessed as 16.7 acres and designated as Map 10, Parcel 18. . . .

8) Based on the uncontested testimony of the witnesses, neither the Plaintiff nor her predecessors in title have had assessed or paid taxes on any land in the area other than the aforesaid 16.7 acres since at least as far back as 1982. . . .

## CONCLUSIONS OF LAW

In order to withstand Defendants' Motion for a Directed Verdict, Plaintiff must refute Defendants' assertion and the proof in the case that she and her predecessors in title have failed to have assessed and paid taxes on the disputed 19.26 acres she claims to own by adverse possession. The Defendants have established through the testimony of the witnesses that the Plaintiff and her predecessors in title have failed to pay taxes due on the disputed 19.26 acres for a period well in excess of twenty (20) years. As a defense to Defendants' Motion, Plaintiff insists that T.C.A. § 28-2-110(a) should not be applied and that the Court should find the disputed 19.26 acres amount to only a "slight overlap" as discussed by our Supreme Court in the aforementioned case of *Cumulus Broadcasting, Inc. vs Shim*. A close review of the *Cumulus Broadcasting, Inc.* case, however, reveals that the Court defines a "slight overlap" to be one that "would rarely have any affect on an evaluation for tax purposes." It simply cannot be said that increasing Plaintiff's tax liability from an assessment based on 16.7 acres to an assessment on 36 acres would have little to no effect for tax purposes. In making this ruling this Court is aware of and has reviewed in detail the cited unreported Court of Appeals decisions. The Court finds these cases to be neither persuasive nor binding precedent.

-6-

Accordingly, IT IS ORDERED, ADJUDGED AND DECREED:

1) This case is barred by T.C.A. § 28-2-110(a) and is dismissed with prejudice.

2) The Plaintiff's Motion to Amend is denied, same being untimely and futile based on the holding herein.

3) The costs of this case are assessed to the Plaintiff.

Dye subsequently filed this timely appeal.

## II. ISSUES

We restate the issues raised on appeal as follows:

a. Whether Dye is barred from claiming title to the land for failure to pay taxes on the land pursuant to Tennessee Code Annotated section 28-2-110.

b. Whether the trial court correctly found that Dye has not adversely possessed the disputed tract.

c. Whether the trial court correctly applied Rule 41 of the Tennessee Rules of Civil Procedure to dismiss Dye's case.

d. Whether the trial court correctly applied the test for a slight overlap under *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366 (Tenn. 2007).

e. Whether the trial court correctly denied Dye's motion to amend.

## III. STANDARD OF REVIEW

Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002); *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We use the Rule 13(d) standard to review a trial court's disposition of a Rule 41.02(2) motion because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence. *Wilson v. Monroe County*, No. E2012-00771-COA-R3-CV, 2013 WL 362827, at *6 (Tenn. Ct. App. Jan. 30, 2013) (citing *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002)).

## IV.  DISCUSSION

### A.

Tennessee Code Annotated section 28-2-110(a) contains a provision that prevents a person who has not paid taxes from bringing an action to claim ownership of the property at issue:

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Tenn. Code Ann. § 28-2-110(a).  Parties relying on section 28-2-110 "must clearly show that the other party failed to pay the taxes."  *Bone v. Loggins*, 652 S.W.2d 758, 761 (Tenn. Ct. App. 1982).

Dye argues that the Tennessee Supreme Court has significantly limited the application of this statute when adjacent landowners have a dispute as to the location of a boundary line, quoting *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366 (Tenn. 2007), as follows:

> Tennessee Code Annotated section 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes.  To hold otherwise would effectively eliminate the adverse possession of any part of an adjoining tract.  As a matter of policy, possession of property for twenty or more years accompanied by all other elements of the doctrine is a basis for ownership.

*Id.* at 381. Dye asserts that a relatively small area is at issue in the instant case, thereby nullifying the requirements of Tennessee Code Annotated section 28-2-110. To establish that the property in dispute constitutes a "relatively small area," she contends we must contrast the size of the disputed property with the combined acreage of her property and that of the Neighbors. Accordingly, Dye argues that we are considering a disputed tract comprising approximately 3.5 percent of the total acreage.

In *Cumulus*, the parties owned tracts of 4.8 acres and 5.2 acres, respectively. Shim, the defendant in the action, alleged a portion of a 20-foot wide service road was on his property, and thereafter moved a fence and bulldozed a portion of the road. Shim claimed until he had his property surveyed, he was uncertain as to the location of the property line. The Court in *Cumulus*, therefore, actually dealt with a "slight overlap." Dye, in the instant case, is claiming double the acreage assessed to her for tax purposes and contained in her deed. The situations are vastly different. We find that the cases cited by Dye are not persuasive under the facts of this case.[9] Furthermore, doubling the acreage for Dye would have a significant impact on the evaluation for tax purposes.

Dye has held title to her property for more than 22 years prior to filing this cause of action, and her mother held it before her since 1937. Dye never disputed the assessment of her property by the Rhea County Property Assessor until filing this action. Further, she never filed any action to recover the property she alleges is in dispute. Dye readily admitted at trial that she had not been assessed or paid taxes on any of the disputed property. No evidence has been offered by Dye to show that the Neighbors or their predecessors in title failed to pay the taxes assessed on the disputed tract. Pursuant to Tennessee Code Annotated section 28-2-110(a), Dye is barred from filing any claim against the Neighbors for the disputed property.

**B.**

As to Dye's contention regarding adverse possession, our Supreme Court has instructed:

> In order to establish adverse possession under [the common law] theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n. 2 (Tenn. 1983); *cf.*

---

[9]Dye submits that this court should follow the holdings in *Sweeney v. Koehler*, No. E2009-02306-COA-R3-CV, 2010 WL 4962888 (Tenn. Ct. App. Dec. 7, 2010) and *Quarles v. Smith*, No. W2009-00514-COA-R3-CV, 2010 WL 653011 (Tenn. Ct. App. Feb. 24, 2010), two unreported Court of Appeals cases.

*Menefee v. Davidson County*, 195 Tenn. 547, 260 S.W.2d 283, 285 (Tenn. 1953). Adverse possession is, of course, a question of fact. *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing. *O'Brien v. Waggoner*, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936). The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. *Kirkman v. Brown*, 93 Tenn. 476, 27 S.W. 709, 710 (Tenn. 1894). When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor. *Cooke v. Smith*, 721 S .W.2d 251, 255–56 (Tenn. Ct. App. 1986).

*Cumulus Broad., Inc.*, 226 S.W.3d at 377. Adverse possession does not require proof of "ill will or actual enmity, but merely means that the party claims to hold the possession as his, against the claims of any other." *Hightower*, 662 S.W.2d at 937.

The "[o]ccasional use of land through cultivation, cutting grass or timber or the grazing of stock is not sufficient to establish adverse possession." *Cusick v. Cutshaw*, 237 S.W.2d 563, 567 (Tenn. Ct. App. 1948). *See also Quarles v. Smith*, No. W2009-00514-COA-R3-CV, 2010 WL 653011 (Tenn. Ct. App. Feb. 24, 2010) (quoting other cases wherein it was stated: "[o]ccasional grazing and cultivation are insufficient to establish adverse possession[,]" and "occasional use of land by cutting trees, no matter how long, will not alone constitute adverse possession." (citations omitted)). "Actions such as the taking of firewood and hunting are more indicative of an intent to trespass than an intent to seize and hold the land." *Heaton v. Steffen*, No. E2008-01564-COA-R3-CV, 2009 WL 2633050, at * 5 (Tenn. Ct. App. Aug. 27, 2009). The law presumes that whatever was done was done in subordination to the rights of the true owner. *Bynum v. Hollowell*, 656 S.W.2d 400, 403 (Tenn. Ct. App. 1983). Therefore, even if we were to hold that Dye established adverse possession of the disputed tract for the requisite time period, she would be barred from claiming it by her failure to pay taxes on it.

## C.

Dye contends that the trial judge in the case at hand did not go through the proper analysis or apply the law correctly to the facts of this case, as this case was tried without a jury and "motions for directed verdicts have no place in bench trials." *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002).

In *Boelter v. Reagan*, No. M2010-01354-COA-R3-CV, 2011 WL 1886573 (Tenn. Ct. App. May 18, 2011), we described the differences between a motion for dismissal in a non-jury case and a motion for a directed verdict:

"A Tenn. R. Civ. P. 50 motion for directed verdict provides a vehicle for deciding questions of law." The trial judge does not weigh the evidence or assess witness credibility. Instead, he reviews the evidence in the light most favorable to the non-moving party in order to determine whether sufficient evidence has been presented to create an issue of fact for the jury to decide. "A jury issue has been created if there is any doubt regarding the conclusions to be drawn from the evidence . . . or if reasonable persons could draw different conclusions from the evidence." However, where reasonable minds could reach only one conclusion, no jury issue is raised.

Motions for involuntary dismissal, however, "challenge the sufficiency of the plaintiff's proof." A dismissal pursuant to Tenn. R. Civ. P. 41.02(2) is appropriate if, "based on the law and the evidence the plaintiff has failed to demonstrate a right to the relief it is seeking." Motions for involuntary dismissal require less certainty than do motions for directed verdict. In deciding a Rule 41.02(2) motion to dismiss, the trial court "need only impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence."

2011 WL 1886573, at *2 (citations omitted).

The Neighbors agree that Rule 41.02 and not a Rule 50 directed verdict motion should have been applied in this instance; they do not accept, however, Dye's contention that the trial court did not apply a Rule 41.02 standard in determining to dismiss the case. They further argue that Dye has made no argument showing the trial judge incorrectly determined this case should have been dismissed pursuant to Tennessee Code Annotated section 28-2-110 under a correct application of Rule 41.02.

We can uphold a Rule 50 motion as a Rule 41.02 motion, so long as the trial court correctly treated the motion as such. *Scott v. Pulley*, 705 S.W.2d 666, 672 (Tenn. Ct. App. 1985). Upon viewing the order from the trial court, it is apparent that the appropriate standard was applied in dismissing Dye's case. The Neighbors were able to show that neither Dye nor her predecessors in title have paid taxes on the property since at least 1982. After weighing the surveys and the testimony of Dye, the trial court correctly applied a Rule 41.02

standard to find Dye's claim to be barred pursuant to Tennessee Code Annotated section 28-2-110.

**D.**

Dye states that she filed a motion to amend to request that the trial court apply champerty as codified in Tennessee Code Annotated section 66-4-202. According to Dye, David Reed, son of Robert Reed and one of the heirs, advised the Neighbors that the survey completed by Dock W. Smith contained property that was owned by Dye. She relates that David Reed even produced an old survey by a Bill Roberts that showed the disputed area to be the property of Dye. She notes that a copy of this survey was provided to the Neighbors prior to the sale. Despite receiving this information that reveals a dispute as to ownership, Dye argues that counsel for the Neighbors prepared a warranty deed and had the unrepresented heirs to sign it without giving them any explanation regarding the parameters of the legal description. She contends the Neighbors' warranty deed is void as champertous.

Tennessee's law of champerty is embodied in Tennessee Code Annotated section 66-4-201, et seq. Section 66-4-202 provides as follows:

> Any such agreement, bargain, sale, promise, covenant or grant shall be utterly void where the seller has not personally, or by the seller's agent or tenant, or the seller's ancestor, been in actual possession of the lands or tenements, or the reversion or remainder, or taken the rents or profits for one (1) whole year next before the sale.

Tenn. Code Ann. § 66-4-202. Under champerty, if one out of possession attempts to convey land that is adversely possessed by a third party, the conveyance is void. *Kincaid v. Meadows*, 40 Tenn. 188, 192, 1859 WL 3430, at *2 (1859); *Blair v. Gwosdof*, 329 S.W.2d 366, 368 (Tenn. Ct. App. 1959). Regardless of the validity of the conveyor's title to the land, such title becomes merely a pretended title, within the statute, when there is an attempt to convey it under such circumstances. *Kincaid*, 40 Tenn. at 192, 1859 WL 3430, at *2; *Blair*, 329 S.W.2d at 368. There is no required duration of adverse possession by the third party; all that is required is that the third party adversely possess the land at the time of the conveyance. *Kincaid*, 40 Tenn. at 192, *Blair*, 329 S.W.2d at 368.

The purpose of champerty statutes is to protect persons in actual possession of an interest in real property from suits based on pretended or dormant claims, unless the suits are instituted in good faith by persons with bona fide claims of title. *Williams v. Hogan*, 19 Tenn. 187, 189 (1838). Parties who have been harmed by a champertous transaction may

seek to set aside the conveyance or to recover damages or both. *See Gheen v. Osborne*, 58 Tenn. 61, 66 (1872).

The Neighbors contend that Dye filed her motion on or about June 6, 2012, almost 30 days after trial. They note that the issue was not raised prior to Dye resting her case-in-chief on May 8, 2012. In the memorandum and opinion and order by the trial court, the motion was denied for being untimely and for its futility to overcome Tennessee Code Annotated section 28-2-110.

In *Hardcastle v. Harris*, 170 S.W.3d 67, 80 (Tenn. Ct. App. 2004), we held that "[l]ate amendments fundamentally changing the theory of a case are generally not viewed favorably when the facts and theory have been known to the party seeking the amendment since the beginning of the litigation." *Id.* at 81. As argued by the Neighbors, Dye waited until almost one month after she presented all her proof at trial to amend her complaint to include the champerty issue. She clearly was well aware of the facts surrounding this case at the beginning of the litigation in 2010, and even stated in her motion that the issue involves no new factual allegations and only requires the court to apply the law to the facts. The trial court properly found the motion to be untimely.

Likewise, courts are not required to grant motions to amend "[i]f the amendment would have been futile." *McCollough v. Johnson City Emergency Physicians*, 106 S.W.3d 36, 47 (Tenn. Ct. App. 2002). Tennessee Code Annotated section 28-2-110 is an affirmative defense that was properly raised by the Neighbors. Dye cannot show that she would prevail on the merits, since she cannot show that she, or her predecessors in title, paid any taxes on the land in the last 20 years, pursuant to Tennessee Code Annotated section 28-2-110. "[A] person having an interest in property will only be barred from asserting ownership if the person, 'who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes.'" *Milledgeville United Methodist Church v. Melton*, 2012 WL 4044726, at *4 (Tenn. Ct. App. Sep. 14, 2012); *In re Twinton Props. P'ship*, 44 B.R. 426, 431 (Bkrtcy. Tenn. 1984) (holding that the plaintiff could not bring suit to recover property where "[n]one of the persons through whom his chain of title was asserted paid any property taxes on the property for the last 20 years, if at all."). Further, while "a conveyance by one out of possession of land, which is adversely possessed by another person or entity, is void . . . in order for the law of champerty to apply, the possession of the third party must be adverse." *Melton*, 2012 WL 4044726, at *4. Without adverse possession, the law of champerty does not apply. As noted above, Dye has not established adverse possession of the disputed tract. Considering the undue delay by Dye in bringing the motion to amend and the futility of granting such a request, we affirm the trial court's decision to deny Dye's motion.

**E.**

The Neighbors also seek an order dismissing this appeal as frivolous and awarding damages to the Neighbors, including but not limited to reasonable attorney's fees and court costs, pursuant to Tennessee Code Annotated section 27-1-122. Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn.1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App.1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny the Neighbors' request.

**V. CONCLUSION**

The judgment of the trial court is affirmed. The case is remanded, pursuant to applicable law, for the collection of costs assessed below. Costs on appeal are assessed to the appellant, Ruby Lois Dye.

_____
JOHN W. McCLARTY, JUDGE